IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JEFFREY J. SCHULTE,

            Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security;

            Defendant.

4:12CV3026

MEMORANDUM AND ORDER

      This matter is before the court on plaintiff's complaint, Filing No. 1, challenging the denial of Social Security disability benefit's application. Jurisdiction is invoked pursuant to 42 U.S.C. § 405. Plaintiff filed an application for disability under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, on January 18, 2011. The administrative law judge ("ALJ") held a hearing on October 26, 2011, and thereafter denied plaintiff's application for benefits. Plaintiff appealed and the Commissioner denied his claim on December 27, 2011.

## BACKGROUND

      Plaintiff was born in 1958. He states he became disabled to work on December 31, 2007. Prior to that, he worked as a caretaker and did maintenance for a family corporation. Plaintiff did not graduate from high school and did not obtain a GED. Plaintiff testified that he is 6 feet tall and weighs 250 pounds. At the hearing plaintiff testified that he cannot return to work because his back gets tired, his shoulders hurt, and walking hurts his knees. Plaintiff testified that he cannot pick up his young grandsons, cannot stand at the kitchen counter for 15 minutes on a bad day, and would have to walk around 15 to 20 minutes before he could resume standing. He has to go

to bed and lay flat with a heating pad when in pain which occurred as often as two or three times per week. (Filing No. 10, Transcript ("Tr.") 35-38). On a good day he could not sit in a chair for more than an hour and only 10 to 15 minutes on a bad day. On a good day he could get around for about 3 to 4 hours a day, but on a bad day he spends most of the time on a heating pad. He can lift at most 5 to 8 pounds, avoids bending or crouching, and has difficulty reaching. He has multiple muscle spasms which reach a 10 on the pain scale on a bad day. Plaintiff testified he did a very limited amount of hunting and he has been unable to golf for at least five years.

He sought treatment from Dr. Michael Morrison in 1995 for his lower back and left leg. An MRI showed disc herniation at the L4-L5 level with extrusion on the left and extruded fragment. Dr. Morrison confirmed and then Dr. James Magill conducted a lumbar myelogram. Dr. Rankin performed a lumbar CT and noted degenerative disc disease at multiple levels. Dr. Morrison performed surgery in 1995. Plaintiff continued having pain thereafter. In 1997, plaintiff saw Dr. David Burton. He saw Dr. Burton again in 2000 and underwent an MRI. In February of 2000 plaintiff again saw Dr. Morrison for lower back pain. On January 2006, plaintiff returned to Dr. Morrison again complaining of pain. Dr. Morrison on both occasions diagnosed degenerative lumbar disc disease and recommended strengthening exercise and pain medications. Plaintiff then saw Dr. Richard Murphy who diagnosed right elbow arthrosis with multiple loose bodies. Dr. Murphy performed surgery for this issue. Plaintiff received injections for his knee pain. In May of 2007, he saw Dr. Stephen Smith complaining about his knee. Dr. Smith injected both knees. Plaintiff then tore his rotator cuff while playing golf. After a number of visits, he received arthroscopic surgery. In June of 2009, plaintiff received

2

more steroid shots in his knee and he continued to take pain medications. He received injections in his knees later in October 2009. Dr. Smith diagnosed osteoarthritis of both knees and also plantar fasciitis.

In January 2011, plaintiff went to see Ross Hanson, PAC of the Faith Regional Family Medicine Services, for hypertension, hyperlipidemia, and back pain. He was given Flexeril for the back spasms. Plaintiff returned in June of 2011 with low back pain and fatigue.

On March 7, 2011, Dr. Smith completed a medical impairment and capacities evaluation. Dr. Smith noted he was the treating physician since 1997 and saw plaintiff regularly for his spine, knees, and elbow issues. Dr. Smith indicated that plaintiff had not improved in spite of the treatment. Dr. Smith indicated that plaintiff's pain would often interfere with his attention and concentration; that the plaintiff should seldom lift or carry up to 10 pounds; should seldom reach, grasp or perform fine manipulations; could occasionally use foot controls; should never bend, squat, crawl or climb; should seldom reach above shoulder level; should never work at unprotected heights or around moving machinery; should seldom work in or be exposed to marked changes in temperature and humidity or driving automotive equipment; and could only occasionally be exposed to dust, fumes and gases. It was the opinion of Dr. Smith that the plaintiff should never work at a rapid pace and that he should not be working at all (Tr. 240-245).

On March 2, 2011, Dr. Jerry Reed, a consulting doctor, did a one-time evaluation of plaintiff's most recent records for the DDS. Dr. Reed determined that plaintiff suffered from OA bilateral knees and S/P left shoulder arthroscopy as of December 31, 2008, and that plaintiff could lift 50 pounds occasionally, 25 pounds frequently; could

stand and/or walk six hours in an eight-hour workday; could sit about six hours in an 8-hour workday; could occasionally climb, crouch, kneel and crawl; and would need to avoid constant/frequent overhead reaching due to s/p arthroscopy of the left shoulder (Tr. 278-285).

The ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act (Tr. 13-20). The ALJ found that plaintiff had the severe impairments of status-post remote discectomy and laminectomy at L4-L5; osteoarthritis of the knees; and status-post left shoulder repair (Tr. 15). However, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b), but could only perform postural activities no more than occasionally (Tr. 16). The ALJ determined that the plaintiff could not do his past work, but that he could do other work that existed in the economy. The ALJ considered plaintiff's daily activities where plaintiff says he "manages through things" (Tr. 17), that he could cook, clean up, and mow the yard (Tr. 17, 183).

The government argues that the relevant period of the court's consideration of plaintiff's disability insurance benefits is December 31, 2007, plaintiff's onset date, through December 31, 2008, his date last insured. The government contends that the elbow, obesity, and degenerative disc problems were prior to the relevant time period.

## LEGAL STANDARDS

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the

4

Commissioner. See *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (*quoting Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (*citing Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, but "more than a mere scintilla." *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (*quoting Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir. 1990). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Perkins*, 648 F.3d at 897 (*quoting Medhaug*, 578 F.3d at 813).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (*quoting Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) (*citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the

Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (internal quotations and citations omitted). The court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). The court does not owe deference to the Commissioner's legal conclusions. *See Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To determine whether a claimant is disabled, the Commissioner must perform the five-step sequential analysis described in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Specifically, the Commissioner must determine: "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe

6

impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to [his] past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 536-37 (8th Cir. 2010). "Through step four of this analysis, the claimant has the burden of showing that [he] is disabled." *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). After the analysis reaches step five, however, "the burden shift[s] to the Commissioner to show that there are other jobs in the economy that [the] claimant can perform." *Id.* The regulations explicitly provide that if the Social Security Administration ("SSA") finds that a claimant is disabled or not disabled at a step, the SSA makes its determination or decision and it does not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

RFC is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184 (July 2, 1996). RFC is what an individual can still do despite his impairments and the resulting limitations. *Id.* While RFC is a medical question, RFC is not based solely on "medical" evidence. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations).

## DISCUSSION

*A. Treating physician*

Plaintiff contends that the ALJ erred by not adequately considering his medically determinable severe impairments, including those espoused by his treating physician, Dr. Smith. See *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his own opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The court has carefully reviewed the record. It is clear that plaintiff has a number of serious impairments. These impairments are well documented by his treating physicians. Other than the opinion of the consulting doctor, there are no conflicting statements from a treating physician. Dr. Smith opines that the plaintiff should not work. The ALJ has no basis for discounting the opinion of Dr. Smith or of discounting the overwhelming evidence of significant disabilities that make plaintiff incapable of work as described in the regulations. Without any significant analysis, the ALJ stated: "because the objective evidence does not support limiting the claimant to less than sedentary activities … little weight [is given] to Dr. Smith's opinion." (Tr. 18.) The ALJ erred in not

8

giving the treating physician's opinions significant weight. Accordingly, the court finds there is not substantial evidence to support the decision of the ALJ to discount the findings of the treating physicians.

  *B. Vocational expert*

  To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (*quoting Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). A VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), and *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)). The Eighth Circuit has further said that "hypothetical questions that do not relate all of a claimant's impairments cannot constitute substantial evidence to support a finding of no disability." *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992). *See also Penn v. Sullivan*, 896 F.2d 313, 316–317 (8th Cir. 1990). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d

689, 695 (8th Cir. 2003). The ALJ has the burden under the fifth prong of the sequential evaluation process to provide information on jobs that plaintiff could perform in the national economy. See 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ called vocational expert Dale Linhart to the stand. The ALJ asked Linhart to explain the requirements of plaintiff's previous work. Mr. Linhart described it as a maintenance job, semi-skilled, lifting of 50 pounds (Tr. 29). The ALJ asked no additional questions and posed no hypothetical questions to Mr. Linhart. Plaintiff contends that the ALJ erred by applying the medical vocational guidelines due to the fact that plaintiff has significant nonexertional limitations. Upon review of the record, it is clear that the ALJ did not include all of plaintiff's credible limitations. For example, even the Social Security Administration's own expert opined that plaintiff's reaching was limited. The ALJ did not incorporate that limitation. Further, the VE was not asked a hypothetical question which incorporated either the exertional or nonexertional limitations. The ALJ, without this testimony, determined that plaintiff could perform a range of light work with the condition that plaintiff could only occasionally perform postural activities. The ALJ does not give examples of the jobs that plaintiff can perform, nor did he consider the history of plaintiff's medical care. The court finds there is a failure of evidence in this regard. There is no substantial evidence in the record to support the ALJ's finding. There is significant medical evidence in this case that is consistent with the plaintiff's testimony. Yet, the ALJ posed no questions to the VE. As a result, the ALJ erred. The ALJ did not use the services of the VE to establish what jobs could be performed by the plaintiff, and instead, the ALJ substituted his belief that plaintiff was not disabled.

### C. *Subjective complaints*

The standard in the Eighth Circuit for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011). An ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support the complaints. *Polaski*, 739 F.2d at 1322.

Absence of an objective medical basis supporting the degree of severity of a disability claimant's subjective complaints is just one factor to be considered when evaluating the credibility of complaints and testimony. *Id.* "The [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The [ALJ] is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations." *Id.* Subjective complaints may be discounted if there are inconsistencies in the record as a whole. *Perkins*, 648 F.3d at 900 (*quoting Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001)). "Not all pain reaches a level [at] which it is disabling." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely

11

because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

The record is replete with allegations of pain by the plaintiff. There are numerous medical records prescribing medications to combat the pain. There is substantial objective and subjective evidence on this record that plaintiff suffered from significant pain. The ALJ erred as a matter of law in not adequately considering this evidence.

*D. Conclusion*

Thus, because the record presented to the ALJ contains substantial evidence supporting a finding of disability, the court may reverse and enter an order granting benefits to the claimant. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984). "Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992). In this case, the substantial evidence supporting a finding of disability is overwhelming. Under the circumstances, further hearings would merely delay benefits. Accordingly, an order granting benefits is appropriate.

THEREFORE, IT IS ORDERED that the determination of the defendant that plaintiff is not disabled is reversed. The defendant is ordered to remand this case for a calculation of disability benefits due and owing to the plaintiff. The plaintiff may file a

motion for attorney fees in this case.  The court will enter a judgment in conjunction with this Memorandum and Order.

      Dated this 12th day of December, 2012.

                                  BY THE COURT:

                                  s/ Joseph F. Bataillon
                                  United States District Judge